United States Court of Appeals,

Fifth Circuit.

No. 93-8424.

Patricia BURGOS, et al., Plaintiffs-Appellants,

v.

SOUTHWESTERN BELL TELEPHONE CO., Defendant-Appellee.

May 11, 1994.

Appeal from the United States District Court for the Western District of Texas.

Before ALDISERT[*], REYNALDO G. GARZA and DUHÉ, Circuit Judges.

PER CURIAM:

The Burgos family appeals the district court's grant of summary judgment in favor of Southwestern Bell Telephone Co. on the basis that section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141-187, preempts their intentional infliction of emotional distress claim. Finding no error, we AFFIRM.

## I. FACTS

Oscar Burgos was employed by Southwestern Bell Telephone Co. ("Southwestern Bell") for over nineteen years. In 1989, Burgos was a non-management employee with the title Communications Technician. He was a member of the labor organization Communications Workers of America, which was a party to a collective bargaining agreement with Southwestern Bell. The agreement covered the conditions of employment of Burgos and other employees similarly situated. In

---

[*]Circuit Judge for the Third Circuit, sitting by designation.

1

August, 1989, Burgos was found to be suffering from a heart condition known as idiopathic, congestive cardiomyopathy. After a period of hospitalization, he recovered sufficiently to return to work in October, 1989, on a restricted basis, the restriction being that he was forbidden to lift anything heavier than twenty-five pounds. With this restriction, Burgos was apparently able to perform the duties of a Communications Technician, at least for a few months. He was assigned to a group known as the Special Services Group.

In March, 1990, Southwestern Bell made a management decision to transfer the work being done by the Special Services Group in El Paso to the Dallas office. Under the collective bargaining agreement then in effect, Burgos had three options: (1) move to Dallas with the Special Services Group; (2) seek and obtain another position with the company in El Paso, or (3) take termination, which entitled the employee to a termination allowance. Burgos advised the company that his doctor advised him not to move to Dallas with the Special Services Group. Rather than taking termination, he decided to apply for another position with the company in El Paso. Pursuant to the Job Vacancy Article of the collective bargaining agreement, Burgos took four tests to determine his qualifications for alternative positions within Southwestern Bell. He failed all four tests, which the appellants specifically attribute to his worsening medical condition.

On July 7, 1990, a position became available in network switching and Burgos was placed in this position. Although his

title of Communications Technician continued, his duties were changed significantly. He was sent to Dallas to attend a course in electronic switching known as the "511A Training Course." Burgos proceeded to fail a segment of this course, and he was deemed by Southwestern Bell to have failed the entire course. As a result, he was "retreated" back to El Paso to his former position in Special Services. His continued efforts to obtain a new position with Southwestern Bell in El Paso were unsuccessful. Finally, on August 17, 1990, Burgos notified Southwestern Bell that he would take termination. Accordingly, his employment was terminated and he received termination pay of about $30,000.00. After this, his heart condition worsened, and he was hospitalized. On October 3, 1990, Burgos died while awaiting a heart transplant.

## II. PROCEDURAL HISTORY

The widow and children of the deceased, Oscar Burgos, brought a civil action in the El Paso County Court, alleging negligence, breach of contract, and intentional infliction of emotional distress. Southwestern Bell filed a notice of removal to the Western District of Texas on the basis of diversity of citizenship and federal question. The Burgos family abandoned all claims except for their intentional infliction of emotional distress claim. The district court granted summary judgment in favor of Southwestern Bell on the basis that section 301 of the LMRA preempted the Burgos family's tort claim. The Burgos timely appealed to this court.

## III. DISCUSSION

3

The sole issue on appeal is whether the district court properly granted summary judgment on the basis that federal law, via the LMRA, preempts the Burgos' intentional infliction of emotional distress claim.

A. *Standard of Review*

This court reviews the district court's rulings on motions for summary judgment *de novo.* *FDIC v. Laguarta,* 939 F.2d 1231, 1236 (5th Cir.1991). A motion for summary judgment should be granted only where competent evidence establishes the absence of a genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). A defendant moving for summary judgment must affirmatively demonstrate that there is no genuine issue of material fact concerning each element of the plaintiff's claims for relief. *See, Id.* at 323, 106 S.Ct. at 2552. An issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This court is required to resolve all reasonable doubts and draw all reasonable inferences in favor of the non-movant, and then determine whether the movant is entitled to judgment as a matter of law. *Wells v. General Motors Corp.,* 881 F.2d 166, 169 (5th Cir.1989), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990).

B. *LMRA Preemption*

The Burgos family argues that the district court erred in holding that their claim of intentional infliction of emotional distress is preempted by section 301(a) of the LMRA. They argue that their claim is based on the conduct of the agents and employees of Southwestern Bell who, with knowledge of Mr. Burgos' serious heart condition, placed Mr. Burgos under such extreme emotional distress that his physical condition deteriorated to the point where he was forced to take voluntary termination and succumbed to an untimely death soon thereafter. The Burgos family argues that they do not complain of the particular Southwestern Bell policies which set this course of harassment and stress into effect. They further argue that their claim of intentional infliction of emotional distress does not require any analysis of the collective bargaining agreement. They conclude, therefore, that their state-law claim is not preempted by section 301(a) of the LMRA.

Southwestern Bell, in contrast, argues that the Burgos' tort claim is nothing more than an attack on their procedures in declaring force adjustments, filling job vacancies, and effectuating terminations. Southwestern Bell claims that the entire process through which Oscar Burgos passed in the spring and summer of 1990 was the effectuation of their force adjustment decision pursuant to the collective bargaining agreement. As the Burgos' tort claim is only another way of complaining about that process and Oscar Burgos' ultimate termination from employment, their claim is substantially dependent upon an analysis of the

5

collective bargaining agreement.  Southwestern Bell concludes, therefore, that the Burgos' tort claim is preempted by section 301(a) of the LMRA.

Section 301(a) of the LMRA states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

In *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405-06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988), the U.S. Supreme Court held:

if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

Prior to *Lingle,* the U.S. Supreme Court, in *Allis-Chalmers Corporation v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985), held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must be either treated as a § 301 claim, [authority omitted], or dismissed as pre-empted by federal labor-contract law."

In *Brown v. Southwestern Bell Telephone Co.,* 901 F.2d 1250, 1253 (5th Cir.1990), an employee was told by his personal physician that he was completely disabled and should not return to work.

6

Southwestern Bell, however, informed the employee that if he did not return to work by a certain date, he would be terminated. *Id.* The employee brought a claim for intentional infliction of emotional distress based on the fact that Southwestern Bell forced him to chose between his job and his doctor's advice. *Id.* This court held that the employee's claim was essentially that his absence from work pursuant to doctor's orders did not constitute a just cause for discharge under the collective bargaining agreement. *Id.* at 1255. Thus, the court reasoned, his claim required an interpretation of the collective bargaining agreement and was preempted by section 301 of the LMRA. *Id.* at 1255-56.

The Fourth Circuit, in *McCormick v. AT & T Technologies, Inc.,* 934 F.2d 531 (4th Cir.1991) (*en banc*), *cert. denied,* --- U.S. ----, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992), dealt with a similar situation. In *McCormick,* the plaintiff brought claims for intentional and negligent infliction of emotional distress, as well as other claims based on AT & T's removal and discard of plaintiff's personal belongings from his locker. *Id.* at 533. The Fourth Circuit held that the plaintiff had the burden of proving wrongful conduct and that he must demonstrate not that the conduct was wrongful in some abstract sense, but wrongful under the circumstances. *Id.* at 535-36. The court went on to state that the circumstances that must be considered in examining management's conduct are not merely factual, but contractual, and the collective bargaining agreement is a crucial component of these circumstances. Therefore, plaintiff's intentional infliction of emotional distress

7

claim was preempted by section 301 of the LMRA.  *Id.* at 536.

We agree with the reasoning in *Brown* and *McCormick.*  In order to determine whether Southwestern Bell acted wrongfully in the way it transferred Mr. Burgos from one section to another, required him to take different tests, and ultimately effectuated his termination, an analysis of Southwestern Bell's obligations under the collective bargaining agreement is necessary.  Since an analysis of the collective bargaining agreement is necessary, the Burgos' intentional infliction of emotional distress claim is preempted by section 301 of the LMRA.

Therefore, we find that the district court properly granted summary judgment in favor of Southwestern Bell.

### IV. CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED.